(103 App. Div. 463.)

## BUTLER v. WRIGHT.

(Supreme Court, Appellate Division, First Department. April 14, 1905.)

1. CONTRACTS—SPECIFIC PERFORMANCE—ADEQUATE REMEDY AT LAW.

Where defendant agreed to deliver to plaintiff certain corporate stock in consideration of shares of the stock of another corporation, together with the resignations in writing of all the latter's directors or trustees, on the breach of such contract by defendant, plaintiff had an adequate remedy at law for the recovery of damages, and could not, therefore, sue for specific performance, though defendant owned 92 per cent. of the stock of the corporation to be delivered to plaintiff, which stock was not listed on any stock exchange, nor purchasable in the market.

2. SAME—DAMAGES.

On breach of a contract to deliver corporate stock which had no market value, plaintiff was entitled to recover the value of the stock, to be determined by ascertaining the nature and amount of the business done by the corporation, the amount of dividends paid, and other facts relating to its value and income.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 262, 263.]

3. SAME—PLEADING.

Where, in a suit for specific performance of a contract to deliver corporate stock, plaintiff expressly alleged that he would suffer great and irreparable damage if the contract should not be specifically performed, and that he had no adequate remedy at law, a denial of such allegation raised an issue of plaintiff's remedy at law, and no affirmative allegation by defendant that plaintiff had a remedy at law was necessary.

4. SAME—WAIVER.

In a suit for specific performance of a contract for the delivery of corporate stock, the fact that defendant assented that the suit be tried

93 N.Y.S.—8

by a referee was not a waiver of his right to object that plaintiff was
not entitled to specific performance on the ground that he had an ade-
quate remedy at law.

Laughlin and Patterson, JJ., dissenting.

Appeal from Judgment on Report of Referee.

Suit by George P. Butler against Richard H. Wright for specific
performance of a contract to deliver stock. From a judgment in favor
of plaintiff on referee's report, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PAT-
TERSON, INGRAHAM, and LAUGHLIN, JJ.

Delos McCurdy, for appellant.
Charles F. Mathewson, for respondent.

INGRAHAM, J.    This action is based upon a contract which is de-
scribed in the complaint as one by which, among other things, the plain-
tiff "agreed to procure and deliver to the defendant, within four
months from the date thereof, all the above-mentioned outstanding cap-
ital stock of said Economy Company, and the defendant agreed to
deliver to said Butler therefor, when tendered, 500 shares of the capital
stock of said Wright's Company, with the proviso that, simultaneously
with the tender of said 1,500 shares of Economy Company stock, the
plaintiff would deliver to the defendant the resignation in writing of all
the directors or trustees of said Economy Company." The complaint
alleges that the defendant refused to deliver to the plaintiff the said
500 shares of stock, or to perform said contract on his part; that, not-
withstanding such refusal, the plaintiff tendered to the defendant the
said 1,500 shares of stock of the Economy Company, with the resigna-
tion in writing of all the directors of said company, and demanded from
the defendant in return therefor 500 shares of the stock of the said
Wright's Company, but that thereupon the defendant again refused,
and has ever since refused, to deliver to the plaintiff the said 500 shares
of stock of the Wright's Company, or any part thereof, or otherwise to
perform said contract on his part; that the stock of neither the Economy
Company nor said Wright's Company is listed on any regular ex-
change, or salable or purchasable in the market; that the price and
value of the stock of each of said companies is uncertain, and that there
is no means of determining the exact value of said stocks or either there-
of, or of computing the damages which would result to the plaintiff
from a failure by the defendant to perform said agreement, but that the
plaintiff will suffer great and irreparable damage if said contract shall
not now be specifically performed by the defendant, and that he has
no adequate remedy at law, and the relief demanded is that the defend-
ant be ordered and directed to transfer and deliver to the plaintiff
proper certificate or certificates representing 500 shares of the capital
stock of said Wright's Company in exchange for 1,500 shares of the
capital stock of the Economy Company, and the resignation in writing
of all the directors of said Economy Company; that, in case of the
failure of the defendant to transfer and deliver said stock or any part
thereof, the defendant be adjudged to pay to the plaintiff the value of
said stock, or of so much of it as he shall not so transfer and deliver,

and that for this purpose the court determine the value of the same; that the defendant account to the plaintiff for, and pay over to the plaintiff, all dividends and profits received or distributed upon the said 500 shares of stock of the Wright's Company from business contracted for by said company subsequent to October 1, 1898, and that the plaintiff have such other or further relief as to the court may seem just and proper in the premises. A copy of this contract is annexed to the complaint, and by it the plaintiff undertook that he would within four months procure and deliver to the defendant all of the outstanding stock of the Economy Packing Company, namely, 1,500 shares, of the par value of $100 each, and the defendant agreed to pay and deliver to the plaintiff, when the 1,500 shares of stock should be tendered to him, 500 shares of the capital stock of the said Wright's Automatic Tobacco Packing Machine Company, of the par value of $100 each. The contract then contains other provisions by which the parties agreed as to the disposition of certain profits made by the respective companies, and as restricting the companies from making certain agreements specified until after the sale was consummated. The defendant admits the making of the agreement, and admits that he has refused to deliver to the plaintiff 500 shares of the capital stock of the Wright's Company, but denies that the plaintiff has performed the conditions of the contract on his part, and denies the other allegations of the complaint. The answer then sets up as an affirmative defense that the contract was procured by reliance upon certain representations made by the plaintiff with intent to deceive and defraud the defendant, that the plaintiff knew that these representations were false, that the defendant relied upon these representations in making the contract, and demanded judgment dismissing the complaint, and declaring the alleged agreement null and void, and canceling the same. Although affirmative relief was thus demanded, there seems to have been no reply served to this answer, so that these allegations were not treated as setting up a counterclaim which would entitle the defendant to affirmative relief, but merely as a defense to the action alleged in the complaint. The action being at issue, the parties consented that it be referred to a referee to hear and determine. The referee found that the stock of Wright's Automatic Tobacco Packing Company had never been listed on any exchange, or had any quoted value or any definite market price, or any certain value capable of exact ascertainment; and, as a conclusion of law, the referee found that the plaintiff has no adequate remedy at law, but made no other finding of any fact that would justify the maintenance of an action for specific performance. As a conclusion of law, he found that the plaintiff was entitled to the transfer and delivery to him by the defendant of 500 shares, of the par value of $100 each, of the capital stock of the Wright Automatic Tobacco Packing Company, and that the plaintiff was entitled to recover from the defendant the dividends declared upon said 500 shares of stock since the contract was to be performed; that in the event of the defendant failing to transfer and deliver to the plaintiff the 500 shares of the capital stock of the Wright's Company, as before provided, "plaintiff is entitled to recover of defendant the value of said shares, or of so many of them as defendant shall fail to transfer and deliver, such value to be fixed as of the entry of

the decree herein, and in such event plaintiff is entitled to apply to this court for directions as to the ascertaining of the value of said shares," and judgment was directed accordingly. The defendant submitted requests to find certain facts and conclusions of law. One of the conclusions of law was that the contract is inequitable, and cannot be enforced in an action for specific performance thereof; and another, that the plaintiff's remedy is at law, and not in equity. These were refused, and the defendant excepted, and he also excepted to the finding of the referee that the Wright's Company had never been listed on any exchange, or had any quoted value capable of exact ascertainment, and also excepted separately to each and every of the conclusions of law contained in the decision. Upon the trial the plaintiff was allowed to testify that he had made investigations, so far as he could, as to the Wright's Company's stock, and, so far as he was able to ascertain, it was not listed on any stock exchange; that he did not find that it had any quoted value, and had never learned of any sales; and that he had had conversations with the defendant, who said that he owned or controlled every share of the company. That was the only evidence as to the value of the Wright's Company's stock introduced by the plaintiff. The defendant was called as a witness on his own behalf, and on cross-examination testified that dividends had been paid on the Wright's Company's stock; that it had no fixed market price, and was not listed on any exchange; that he owned about 92 or 93 per cent. of it, and the balance was mainly owned by the officers of the company; as it was not listed, he could not give a fixed value or a fixed selling price; that it depended on the number of machines the company could sell; that he had tried to get an offer for the whole thing, and the best offer he could get was $10,000. The evidence having been concluded, the defendant admitted that he was the owner and in possession of and able to deliver 500 shares of the Wright's Company, and there was therefore no necessity for a determination by the referee of the value thereof; and the evidence seems then to have been closed, and the case submitted to the referee, no motion of any kind having been made.

The first question is whether this action, as an action in equity, could be maintained, or whether the remedy was an action at law for damages for a breach of the contract. The action was based upon a breach of contract to sell stock of an incorporated company. It is not alleged that the contract was made to enable the plaintiff to acquire the control of the company, nor is there any fact alleged or found by the referee to justify the court in entertaining an action for specific performance, except the fact that the stock had no market value. The case is no different, therefore, from the sale of any merchandise which has no market value, and, unless a different rule is to be applied to a contract for the sale of stock from that applied to a contract for the sale of other personal property, I do not think that this is sufficient. The referee found that in case the defendant did not deliver the stock the plaintiff was to have judgment for its value, leaving the question of value to be determined upon application at the foot of the judgment. This would seem to be inconsistent with the finding that plaintiff had no adequate remedy at law. It is a general rule, which I had supposed

was settled, that a court of equity will not entertain an action for a specific performance of a contract for the sale of chattels, unless special facts are alleged and proved to show that an award of damages for a breach of the contract of sale would not afford the plaintiff an adequate remedy. Thus the rule is stated in Am. & Eng. Enc. of Law (2d Ed.) vol. 26, p. 17:

"As the origin of the remedy of specific performance was due to the inadequacy of the common law, under the doctrines of which a judgment for damages was, as a rule, the only redress for civil wrongs, so, the inadequacy of the legal remedy is still the controlling requisite for specific performance. Where, therefore, a party applying for the specific performance of a contract is shown to have an adequate remedy at law, equitable interposition of the nature under discussion will, as a rule, be denied."

In the opinion of the referee he bases his conclusion that this contract should be specifically enforced upon the fact that the stock of the Wright Company has no market price; that the defendant admits that there have never been any sales of the shares; that he owns from 92 to 93 per cent. thereof, and that the balance is held by his friends and by persons who are officers and directors of the Wright Company; and that the defendant testified that the stock was not worth 10 per cent. of the par value thereof, but admitted the Wright Company paid dividends from 1898 to 1903 ranging from 4 to 20 per cent.; and for this reason the referee states as his conclusion that: "In actions of this character, where all proof of sales of shares is wanting, equity will decree specific performance;". and cites as an authority Johnson v. Brooks, 93 N. Y. 337. In that case the defendant had received $3,000 to invest in the capital stock of a corporation, and invested the money so received, and had the stock. The stock had been acquired by the plaintiff's money, and belonged to the plaintiff, an entirely different position from a mere executory contract to sell capital stock of a corporation. In discussing this question, the learned judge writing the opinion says:

"But while it may be conceded that in general a court of equity will not take upon itself to make such a decree where chattel property alone is concerned, its jurisdiction to do so is no longer to be doubted, and it is believed that no good reason exists against its exercise in any case where compensation in damages would not furnish a complete and satisfactory remedy."

And the court then, after citing from Pomeroy on Specific Performance, says:

"These views have not been fully adopted by the courts, but their equitable jurisdiction has been greatly extended in cases either of express or constructive trusts in relation to chattels, and the present case is within the principle upon which many others stand. * * * The appellant cannot get over the fact that he obtained the share and bonds under circumstances which prevent him from setting up ownership as against the plaintiff, and impose upon him at least a quasi fiduciary relation, which he cannot avoid without the consent of the real owner."

The right of the plaintiff to relief was then upheld because of the existence of a fiduciary relation, as the bonds and stocks were purchased by the defendant with the plaintiff's money. No case in this state to which my attention has been called, or which I have been able to find, has held that a mere executory agreement to

sell stock of a corporation can be specifically enforced on merely showing that there have been no sales of the stock, that it is not listed on any exchange, and that the defendant is the owner of a large majority of the stock of the corporation; and that is the evidence upon which the court has granted specific performance of this contract. In Phillips v. Berger, 2 Barb. 608, cited by the Court of Appeal in Johnson v. Brooks, Judge Edmonds says:

"The rule in regard to personal contracts yet falls short of that, and is extended only to cases where the party wants the thing in specie and he cannot otherwise be compensated; that is, where an award of damages would not put him in a situation as beneficial as if the agreement were specifically performed, or where the compensation in damages would fall short of the redress which his situation might require. The general rule is not to entertain jurisdiction to decree a specific performance of agreement respecting goods, chattels, stock, choses in action, and other things of a mere personal nature; but the rule is qualified, and is limited to cases where a compensation in damages would not furnish a complete and satisfactory remedy."

In Bomeisler v. Forster, 154 N. Y. 229, 48 N. E. 534, 39 L. R. A. 240, Judge Gray, in stating the instances in which courts of equity will interfere, says:

"The rule of specific performance will be extended to personal contracts, where the party wants the thing in specie and he cannot otherwise be compensated. That is to say, the extension of the rule to such cases is justified where there would not be a complete and satisfactory remedy by compensation in damages, or. where the benefits of the contract would not inure fully to the party in whose favor it was made unless it was specifically performed."

In Lighthouse v. Third Nat. Bank, 162 N. Y. 336, 56 N. E. 738, the rule is stated:

"That, in general, a court of equity will not take upon itself to make such a decree where chattel property alone is concerned, although its jurisdiction to do is no longer to be doubted; and it is believed that no good reason exists against its exercise in any case when compensation in damages would not furnish a complete and satisfactory remedy."

The same rule is recognized in Matter of Petition of Argus, 138 N. Y. 557, 34 N. E. 388, limiting the right to enforce a contract for the sale of stock by specific performance to a case where "compensation in damages will not furnish a complete and satisfactory remedy." See, also, Kennedy v. Thompson 97 App. Div. 296, 89 N. Y. Supp. 963. Williams v. Montgomery, 148 N. Y. 519, 43 N. E. 57, illustrates a case in which a court of equity was justified in decreeing the specific performance of a contract. Judge Vann, in delivering the opinion, says:

"Although performance of a contract relating to personal property may not be demanded as a right, it rests in the sound discretion of the court, where, as in this case, compensation in damages would be difficult, if not impossible, owing to the fact that the matter was in the nature of an experiment, contracted for but not made, so that the result, of necessity, could never be known."

In all these cases the rule is stated that specific performance of a contract for the sale of chattels will not be decreed where the judgment for damages will be adequate relief, and in no case in this state has specific performance been decreed merely because there was difficulty in ascertaining the damages that the plaintiff would sustain by

reason of a breach of a contract for the sale of stock. No fact is shown here to justify a finding that the plaintiff had a special interest to acquire this specific stock. It would not give him the control of the corporation, and it is not suggested that he desires the stock except for the purpose of the pecuniary advantage which would accrue to him from its ownership. Such pecuniary advantage would be compensated by the award of an amount as damages, the difference between the value of his stock that he was to transfer to the defendant, and the stock that the defendant was to transfer to him. If there is no market value of the stock, there can be, I think, no difficulty in ascertaining its value, considering the contracts that the company has made, the nature of its business, the amount of the dividends paid, and the other facts relating to the value of its property and its income; and the referee himself recognized the practicability of ascertaining the value of the stock by the provisions in the judgment to which attention has been called. Unless we are prepared to hold that a contract to deliver stock can be specifically enforced where it can be shown that the stock is not listed and sold or offered for sale, I do not think that the plaintiff has proved facts to justify the court in granting a specific performance of the contract.

The plaintiff, however, claims that this point is not available because it was not pleaded. The plaintiff, however, to sustain his cause of action, and to justify an application to the court for equitable relief, expressly alleges in the complaint that the plaintiff will suffer great and irreparable damage if the contract shall not be specifically enforced, and that he has no adequate remedy at law. That allegation is denied by the answer, and there is therefore presented an issue as to whether or not the plaintiff has an adequate remedy at law. The plaintiff based his cause of action for a specific performance upon this allegation, and a denial by the defendant of the allegation presented an issue, and no affirmative allegation that the plaintiff had a remedy at law was essential. The fact that the defendant assented that the action be tried by a referee would not waive his right to have the question determined as to whether he should be compelled to part with his stock by a decree of specific performance, or whether he should be left to his remedy at law, which was presented by the pleadings.

Without considering the other questions presented, I think the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur. PATTERSON, J., dissents.

LAUGHLIN, J. (dissenting). Since, for want of a market value, it would be exceedingly difficult, if not impossible, to prove the damages, I fail to see how an action at law would afford adequate relief.